UPSHUR, J.,
delivered the opinion of the court. The most serious difficulty the court has had in this case, has grown out of the ambiguous phraseology of the bills of exceptions. Some of the judges think, that the expression “the prisoner being first found in possession of the other notes” &c. in the second bill of exceptions, and the expression ‘ ‘the prisoner being in possession of the note in the indictment mentioned” &c. in the third bill of exceptions, ought to be construed as an instruction by the court, that these facts were proved; and of course, that the court, in this respect, encroached upon the proper province of the jury. If this construction had been admitted by the other judges, there would have been no difference of opinion among us, in regard to the law. A majority of us, however, think, from an attentive examination of the record, that the judge meant to submit those facts hypothetically, and that the jury must have so understood him. The expressions above mentioned are not stronger than this, “it being proved, that the prisoner was found in possession” *&c. which, without any violence to language, may be interpreted, if it be proved &c. or, if the jury shall believe &c. or, when it is proved &c. to which form of insürúction no objection could be urged. We feel warranted in believing, that this wasj the meaning of the judge, and that the jury so understood him, from the particular terms used in the first bill of exceptions; wherk after stating all the facts proved on the tri,al, the court instructed the jury, that they were prima facie evidence &c. If the instruction contained only these words, they would be precisely equipollent with the expressions “being found in possession” &c. and would receive the same construction: but the court, in the first part of this instruction, explains its own meaning, by saying that “the circumstances above set forth, were proper evidence for the jury.” It is to be remarked that the court did not tell the jury, that the facts above proved, were proper evidence for its consideration, nor is there any other word or expression, which warrants us in concluding, that the court meant to assume that the facts were proved. “The circumstances above set forth,” that is, the circumstances in relation to which evidence had been offered, were proper for the consideration of the jury. And how were the jurj' to consider them? Not as facts proved or assumed as true; but they were first to consider, whether the facts were proved or not, and if the evidence in relation to those facts, which the court first declared to be proper for the jury, should satisfy the jury, that the facts themselves were proved, then that those facts amounted to prima facie evidence of guilt, and were proper for their consideration, though not conclusive upon them. This, we think, the fair construction of the language of the court in the first bill of exceptions, and the construction which must have been placed on it by the jury. We think it correct, as a general rule, that where more than one bill of exceptions, is taken in a cause, the court, in considering any one of them, may refer to others, in order to ascertain the precise point to which the mind of the judge was directed, and the precise extent to which he ^intended his instruction should apply. This rule is still more applicable to a case in which all the evidence or facts proved, appear in one bill of exceptions, and all the instructions given relate directly to those facts. In the case before us, the second bill of exceptions contains a direct reference to the facts or evidence stated in the first. The instructions in the two cases are in pari materia, and ought, as we believe, to receive the same interpretation. And though the third bill of exceptions contains no such direct-reference, still we feel authorized, by the intimate connexion of its subject with that of the other two, to put upon that also, a similar construction.
Upon the whole, a majority of us consider the record in this case, as presenting only the following questions: 1. Is the possession of forged bank notes, together with the plates and other implements used in forging them, prima facie evidence, that the person so found in possession, did feloniously forge them? And 2. Is such possession prima facie evidence, that the forgery was committed in the place where such possession was first discovered?
1. Bj the terms “prima facie evidence,” as used by the judge in the instructions before us, we understand only, such a state of facts, as upon first impression cannot be reasonably accounted for without supposing the guilt of the prisoner. In the absence of every thing to contradict or explain it, such a state of facts ought, in general, to be considered by the jury sufficient to warrant a verdict; but it would not *498 bind them with the force of conclusive proof. It is nothing more than a high degree of presumptive proof, or in other words, such a state of facts, as cannot, by natural and fair construction, consist with the innocence of the prisoner. In some cases of presumptive proof, the influences would be strong and irresistible; in others, weak and wholly inconclusive. In all cases, the jury are to weigh the circumstances, and to draw from them whatever inferences they may warrant. The instruction, therefore, that the facts, in the present case amounted to prima facie evidence of *guilt, was only saying, in other words, that they were such that the jury might (not that they were bound to) infer from them the guilt of the prisoner, without any auxiliary evidence. We think this instruction strictly correct. We can see no reason, why the possession of forged notes, with the plates and other instruments used in forging them, should not create as strong a presumption, that the person so found in possession is the actual forger, as the possession of stolen goods creates, that the person found in possession of them, is the actual thief. In both cases, the presumption may be repelled by proof, explaining or accounting for the possession; but in the absence of all such proof, the inference of guilt, upon any fair view of human conduct, is as strong in the one case as in the other. In the case before us, the inference is still farther justified, by the fact, that the prisoner was found in possession, not only of the note described in the indictment and of the plate with which it was made, but also of a large amount of other forged notes and the plates used in forging them. Apart from all. direct authority, therefore, we consider the principle reasonable in itself, "and strictly within the analogies afforded by other well established cases of presumptive proof. It derives strength also, from the authorities applying to the second question, which we now proceed to consider.
2. In the case of the U. States v. Britton, 2 Mason’s Rep..470, judge Story, sitting in the federal circuit court, decided, that a check drawn in Philadelphia, in favor of a person then in Philadelphia, but presented in an altered and forged state in Massachusetts, should be presumed, in the absence of all proof to the contrary, to have been altered and forged in Massachusetts. His words are these: “If its existence in a forged state, is not proved in any other place, it must, from the necessity of the case, be presumed to have been forged where its existence in such state is first made known.” This decision is not opposed, if it be not supported, by the authorities relied on by the prisoner’s counsel, for the contrary position. In Crocker’s case, 2 *Leach, 987, (better reported in 5 Bos. & Pul. 87,) the prisoner was indicted for forgery committed in the parish of St. Edmund in Sarum, Wiltshire: the forged note bore date in Somersetshire, in which county it was proved that the prisoner resided at the time of the date of the note; and there were other circumstances tending to shew, that the forgery was not committed in Wilts but in Somerset. The prisoner was pardoned, and the judges gave no opinion upon the point before us. We are informed, however, that it was understood that a majority of them thought the evidence not sufficient to prove the forgery in Wilts. In Thomas’s 'case, 2 East’s C. E. 605, the prisoner was indicted for stealing certain letters from the mail; and the venue was laid in Middlesex, where the letters were first found on him. Here also, there was conflicting evidence as to the place where the larceny was committed, and the jury expressly found that it was not committed in Middlesex. In Parke’s case, 2 Eeach, 775, the question before us did indeed, pass under the notice of the judges, but it was hot the principal question, and was not solemnly decided either way. Parkes was indicted at the Old Bailey, for the forgery of a promissory note, which bore date at Righton, Salop. Some of the judges thought that the fact of his being founded in possession of the note in London, was prima facie evidence of his having forged it there; all agreed, that it was evidence proper for the consideration of the jury, but the majority without deciding, whether it was prima facie evidence or not, were of opinion that there was sufficient proof that the forgery was not committed in London ; and therefore, that the presumption arising from the fact of his having been found in possession of the forged note there, was contradicted and removed. It is manifest that neither of these cases is in conflict with Britton’s case. They no where disaffirm the principle, that the possession of a forged instrument is prima facie a presumptive proof, that the forgery was committed at the place where such possession was first made known, but they all go upon the *ground, that there was sufficient counter proof in the particular case, to remove the presumption.
Eor these reasons a majority of the court are of opinion, that the writ of error ought to be denied. But in this opinion judges Lomax, May, Semple and Johnston do not concur. All those judges, after much consideration, have placed a difierent construction upon the bills of exceptions from that which is herein assumed. Had this been otherwise, judge Johnston would have concurred with the majority of the court; and judge Lomax would have so far concurred, as to consider the possession &c. as prima facie evidence of aiding and assisting, at least.
Judges May- and Semple are of opinion, that although the evidence would have been legal and proper for the consideration of the jury, and that they might well have deduced therefrom the inference of the prisoner’s guilt, yet that it was error to instruct them that it was prima facie evidence thereof.
Writ of error denied.